1
2
3
4
5
6
7

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

| 11 | UNITED STATES OF AMERICA, | Case No.: 1:21-CR-00277 JLT SKO |
| 12 | Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| 13 | v. | (Doc. 35) |
| 14 | MYRON KILGORE, | |
| 15 | Defendant. | |

16

17   After having been stopped for a traffic violation, officers determined that Myron Kilgore was

18 on post-release community supervision. They searched Mr. Kilgore's vehicle and discovered a loaded

19 gun under the floorboard of the driver's seat. In this action, he is charged with a violation of 18 U.S.C.

20 § 922(g)(1). Mr. Kilgore contends that the indictment should be dismissed because the law prohibiting

21 felons from possessing weapons and ammunition is inconsistent with the Second Amendment and,

22 therefore, is unconstitutional. Because the Court finds the statute to be rooted in history, the motion is

23 **DENIED**.

24 **I.   Background**

25   Officers encountered Mr. Kilgore while he was driving a vehicle with a broken taillight. (Doc.

26 1 at 2.) They determined that he was on post-release community supervision and had been convicted

27 of five felonies by that time. *Id*. at 3-4. The officers searched the vehicle and found a "Glock-style

28 firearm" without a serial number loaded with six live rounds under the driver's side floorboard. *Id*. at

3. Mr. Kilgore correctly described the gun and admitted knowing it was loaded and that it was in the car. *Id*. He confirmed he was a convicted felon and should not have had the weapon or the ammunition. *Id*. at 2. Consequently, he was charged by complaint (Doc. 1) and by indictment with being a felon in possession of ammunition (Doc. 7) in violation of 18 U.S.C. § 922(g)(1).

In this motion, Mr. Kilgore argues that § 922(g)(1) is unconstitutional because it improperly infringes on his rights under the Second Amendment to the United States Constitution and consequently, the Court should dismiss the indictment. Because the Court concludes that felons are not guaranteed the right to bear arms, the motion is **DENIED**.

**II.    Analysis**

In 2005, the Ninth Circuit determined *United States v. Younger*, 398 F.3d 1179, 1192 (9th Cir.2005) and held that 18 U.S.C. § 922(g)(1) does not violate the Second Amendment rights of a convicted felon. Five years later in *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010), the Ninth Circuit considered whether *Younger* should be reconsidered in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008)[1]. The court determined that *Heller* specifically limited itself to non-felons. *Heller* held, "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, **nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller,* at 627, emphasis added. *Heller* describes these statutes limiting the Second Amendment as "presumptively lawful regulatory measures." *Id*. at n. 26. Consequently, *Vongxay* determined that its holding in *Younger* remained good law.

Six months later, the Ninth Circuit decided *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011), in which the defendant, while relying on *Heller*, asserted that his conviction for possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A), was unconstitutional. The Court found no support in *Heller* for that position and held, "Although the courts

---

[1] On June 28, 2010, the Supreme Court decided *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 750 (2010), which applied the rationale of *Heller* to the states.

2

undoubtedly will continue to develop the full scope of the rights conferred by the Second Amendment, it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm in furtherance of drug trafficking." *Id*. at 1261.

Ten year later, the Supreme Court decided *New York State Rifle & Pistol Association, Inc. v. Bruen*, ⎯⎯ U.S. ⎯⎯, 142 S. Ct. 2111 (2022). In *Bruen*, the Court addressed the constitutionality of a law prohibiting "ordinary, law-abiding citizens" from carrying handguns in public. *Id.* at 2122. In doing so, the Court was careful to limit its decision to the context of regulations that "burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. Indeed, the question presented was whether "law-abiding citizens" have the right to carry handguns in public. *Id*. at 2122; see also *id*. at 2138 n.9 (indicating that the Court's analysis was intended to consider only the impacts on "law abiding, responsible citizens." Thus, due to its limited holding, *Bruen* does not overrule Ninth Circuit precedent finding that § 922(g)(1) is constitutional.

Though Mr. Kilgore's motion does not challenge that he is not a "law-abiding citizen," he argues that the Ninth Circuit authority has been overruled because the Court failed to conduct a *Bruen* analysis to determine whether felons historically were deprived of their rights to carry guns in public. (Doc. 32) The Court disagrees. Mr. Kilgore's argument conflicts with the Court's obligation to construe Ninth Circuit opinions in a manner consistent with Supreme Court precedent. *See Federal Trade Commission v. Consumer Defense, LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019). In *Federal Trade Commission*, the Ninth Circuit held even if there is "tension between the intervening higher authority and prior circuit precedent," courts must apply circuit precedent unless the precedents are "clearly irreconcilable." *Id*.

Toward this end, the Court in *Heller* observed that though the face of the Second Amendment extends to all of "the people," in fact, *Heller* held the Second Amendment protects *only* the rights of "law-abiding, responsible citizens." It held further that laws restricting the rights of felons to possess weapons remain in good stead. 554 U.S. at 626, 635. "The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong headed views. The Second Amendment is no different. Like the First, it is the very product of an interest balancing

3

by the people . . .And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."[2] *Id.* at 635.

Even still, courts have considered the historical context to determine that the Second Amendment does not guarantee the rights of felons and other non-law-abiding citizens to bear arms. In *United States v. Yancey,* 621 F.3d 681 (7th Cir. 2010)[3], the Seventh Circuit analyzed whether history allows the government to criminalize the possession of guns by some of our citizenry. The court held,

> Though scholars continue to debate the evidence of historical precedent for prohibiting criminals from carrying arms, compare *Skoien*, 614 F.3d at 640-41; Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 MICH. L.REV. 204, 266 (1983) ("Felons simply did not fall within the benefits of the common law right to possess arms."), with *Skoien*, 614 F.3d at 640-41 (Sykes, J., dissenting); C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?20cr* , 32 HARV. J.L. & PUB. POL'YY 695, 728-35 (2009), it cannot be disputed that states were regulating firearms as early as the nineteenth century. *See State v. Hogan*, 63 Ohio St. 202, 218-19, 58 N.E. 572 (1900) (opining that prohibition on tramps bearing arms was constitutional); *State v. Shelby*, 90 Mo. 302, 2 S.W. 468, 469 (1886) (upholding law prohibiting intoxicated persons from carrying firearms); see also *Robertson v. Baldwin*, 165 U.S. 275, 281-82, 17 S.Ct. 326, 41 L.Ed. 715 (1897) (noting that Bill of Rights codified liberties inherited from "our English ancestors" with well-recognized exceptions). **Whatever the pedigree of the rule against even nonviolent felons possessing weapons (which was codified in federal law in 1938), most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm "unvirtuous citizens."** *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir.2010) (citing Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 TENN. L.REV. 461, 480 (1995), and Don B. Kates, Jr., *The Second Amendment: A Dialogue*, LAW & CONTEMP. PROBS., Winter 1986, at 143, 146 (1986)), petition for cert. filed (July 13, 2010) (No. 10-5423); THOMAS M. COOLEY, A TREATISE ON CONSTITUTIONAL LIMITATIONS 29 (Boston, Little Brown & Co. 1868) (explaining that constitutions protect rights for "the

---

[2] And Courts have done this. For example, this Court, in *Pervez v. Becerra*, 2022 WL 2306962, at *2 n. 2 (E.D. Cal. June 27, 2022), found that *Bruen* did not affect a California law forbidding people who had been certified to be dangerous or gravely disabled from possessing firearms for a five-year period).

Likewise, Mr. Kilgore's argument that felons were not deprived of their guns historically is flawed. Indeed, many felonies were punishable by death. "Felons simply did not fall within the benefits of the common law right to possess arms. That law punished felons with automatic forfeiture of all goods, usually accompanied by death. We may presume that persons confined in gaols awaiting trial on criminal charges were also debarred from the possession of arms. Nor does it seem that the Founders considered felons within the common law right to arms or intended to confer any such right upon them. All the ratifying convention proposals which most explicitly detailed the recommended right-to-arms amendment excluded criminals and the violent." Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204, 266 (1983).

[3] *See also United States v. Greeno,* 679 F.3d 510, 519–20 (6th Cir. 2012) (tracing the history of laws separately penalizing or increasing the severity of punishment for crimes committed by individuals using weapons during the commission of the crime), as overruled by *Bruen*, ––– U.S. –––, 142 S. Ct. 2111, 213 L.Ed.2d 387; *United States v. Emerson*, 270 F.3d 203, 226 n.21 (5th Cir. 2001) (discussing historical authority as early as the 18th century excluding felons from possessing firearms).

> People" excluding, among others, "the idiot, the lunatic, and the felon"); see also *Skoien*, 614 F.3d at 640-41. As we've explained in a different context, most felons are nonviolent, but someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use. *United States v. Lane*, 252 F.3d 905, 906 (7th Cir.2001). **Thus, while felon-in-possession laws could be criticized as "wildly overinclusive" for encompassing nonviolent offenders, every state court in the modern era to consider the propriety of disarming felons under analogous state constitutional provisions has concluded that step to be permissible.** Adam Winkler, *Scrutinizing the Second Amendment*, 105 MICH. L.REV. 683, 721 (2007).

*Id.*, at 684-685, emphasis added. The Court agrees with and adopts the analysis of *Yancey* and finds it comports with the proper historical analysis required by *Bruen*. Thus, consistent with the Ninth Circuit authorities, the Court **DENIES** the motion to dismiss the indictment.

IT IS SO ORDERED.

Dated:    **March 13, 2023**

                                   _____
                                   UNITED STATES DISTRICT JUDGE