UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MYRON KILGORE,<br><br>　　　　Defendant. | Case No.: 1:21-CR-00277 JLT SKO<br><br>ORDER DENYING MOTION TO SUPPRESS<br>(Doc. 34) |

After having been stopped for a traffic violation, officers determined that Myron Kilgore was on post-release community supervision. They searched Mr. Kilgore's vehicle and discovered a loaded gun under the floorboard of the driver's seat, drugs in the trunk and drugs in his pants pocket. Mr. Kilgore seeks to suppress statements he made after he was advised of his *Miranda* rights because the officer's recitation of the rights was too fast. Because the Court finds Mr. Kilgore was properly advised of his *Miranda* rights and he waived his rights, the motion is **DENIED**.

I.    **Background**

Officers Villapondo and Canatsy encountered Mr. Kilgore while he was driving a vehicle with a broken taillight. (Doc. 33-1 at 4) They determined that he was on post-release community supervision and had been convicted of five felonies by that time. *Id*. Officer Villapondo searched the vehicle and found a "Glock-style firearm" without a serial number loaded with six live rounds under the driver's side floorboard. *Id*. Officer Villapondo then went to the patrol car where Mr. Kilgore was

1 seated. *Id*. Officer Villapondo gave Mr. Kilgore his *Miranda* warning after which Mr. Kilgore made
2 the statements at issue. *Id*.

3     The body cam footage reveals that Officer Villapondo's recitation of the *Miranda* rights was
4 fast. (Doc. 33-1 at 15:49 minutes) After he finishes, Officer Villapondo asks Mr. Kilgore whether he
5 understands his rights. The body camera does not pick up Mr. Kilgore's response[1], but Officer
6 Villapondo says, "Ok" as if acknowledging Mr. Kilgore's response. In his law enforcement report,
7 Officer Villapondo notes that Mr. Kilgore "stated he understood his rights."[2] (Doc. 33-1 at 4) After
8 this, Officer Villapondo began questioning Mr. Kilgore about the contents of the car, and Mr. Kilgore
9 responded without objection.

10     Mr. Kilgore described the gun Officer Villapondo found, admitted knowing it was loaded and
11 that it was in the car. *Id*. He confirmed he was a convicted felon and should not have had the weapon
12 or the ammunition. *Id*. at 2. Consequently, he was charged by complaint (Doc. 1) and by indictment
13 with being a felon in possession of ammunition (Doc. 7) in violation of 18 U.S.C. § 922(g)(1).

14     In this motion, Mr. Kilgore argues that his statements should be suppressed because he did not
15 make a voluntary, knowing and intelligent waiver of his *Miranda* rights due to the speed with which
16 the officer advised him of his rights, the fact that the speed "trivialized" the rights and because the
17 officer failed to advise him that he could stop answering questions at any time. (Doc. 33 at 4-5) The
18 government opposes the motion and argues that the advisal was adequate and that Mr. Kilgore waived
19 his rights even though the body cam failed to pick up his response.

20 **II.     Analysis**

21     The Fifth Amendment to the United States Constitution protects a person from being
22 compelled to be a witness against oneself. "Custodial interrogations, by their very nature, generate
23 'compelling pressures which work to undermine the individuals will to resist and to compel him to
24 speak where he would not otherwise do so freely.'" *Moran v. Burbine*, 475 U.S. 412, 420 (1986)
25 (quoting *Miranda*, 384 U.S. at 467). "To combat this inherent compulsion, and thereby protect the

---

27 [1] The body camera does not pick up many of Mr. Kilgore's responses. In fact, Officer Villaponda says "what?," "huh?" and "what's that?" several times. At one point, he asks Mr. Kilgore to "speak up."
28 [2] The report does not place this statement in quotes and does not purport to record Mr. Kilgore's exact response. *Id*.

2

Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused." *Moran*, 475 U.S. at 420; see also Dickerson v. United States, 530 U.S. 428, 435 (2000); *United States v. IMM*, 747 F.3d 754, 764 (9th Cir. 2014). *Miranda* warnings are not rights but are "measures to insure that the right against compulsory self-incrimination [is] protected. Reviewing courts therefore need not examine Miranda warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by Miranda. *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (internal citation omitted). Thus, the Constitution requires only:

> that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

*Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). "For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's 'waiver of Miranda rights must be voluntary, knowing, and intelligent.'" *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). "A valid waiver of Miranda rights depends upon the 'totality of the circumstances including the background, experience, and conduct of defendant.'" *United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008); quoting *Garibay* at 536. The Court should consider whether the defendant signed a written waiver, whether he received the warnings in his "native tongue," whether he appeared to understand his rights and whether he had prior experience in the criminal justice system, among other factors.

Mr. Kilgore admits that the *Miranda* advisal was "technically sufficient." (Doc. 33 at 4) He agrees also that the failure to advise him of his right to stop questioning does not mean that the *Miranda* warning was inadequate, though it may bear on the voluntariness of the waiver.[3] *Id.* at 4-5. Even still he argues that his waiver was involuntary. The Court disagrees.

Though the Court acknowledges that the officer spoke quickly, the Court does not find any part of the warning to be "incomprehensible." It appears that neither did Mr. Kilgore who did not ask for

---

[3] Notably, Mr. Kilgore does not submit a declaration indicating that he did not understand his rights or that he felt any pressure to speak.

clarification or for the warnings to be repeated. Likewise, though the body cam footage fails to pick up Mr. Kilgore's statement in response to Officer Villapondo's warnings, it appears he admitted that he did understand based upon the officer's written report and the fact that, indeed, Mr. Kilgore immediately began answering the officer's questions.

In any event, there is simply no evidence before the court suggesting coercion or any evidence that would support a finding that Mr. Kilgore's statements were not voluntarily made. See *Moran*, 475 U.S. at 421; *Cook v. Kernan*, 948 F.3d 952, 968–69 (9th Cir. 2020). The evidence before the Court is that Mr. Kilgore has had repeated experience with the criminal justice system. (Doc. 1 at 3-4) The body cam footage demonstrates that he speaks English, and the warnings were given in English. He was 41 years old at the time of questioning (Doc. 33-1 at 3) and there is no indication he suffers from any mental defects. Nothing in the body cam footage indicates that he did not understand the advisement of rights provided to him by the detectives. *See Hernandez v. Ducart*, 824 F. App'x 491, 493–94 (9th Cir. 2020) (affirming that while maturity is relevant in determining police coercion, defendant had endured only two hours of questioning, received Miranda warnings, and was able to "parry the officers with some agility while maintaining composure throughout"). Mr. Kilgore was not threatened with physical force or otherwise by law enforcement officers. *See Hernandez* at 493–94.

Moreover, the Court finds that no evidentiary hearing is required. "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986), *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990), *United States v. Irwin*, 612 F.2d 1182, 1187 n.14 (9th Cir. 1980) and *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972)). "[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a desire to cross-examine." *United States v. Marcello*, 731 F.2d 1354, 1358 (9th Cir. 1984)); *United States v. Woodson*, 2011 WL 5884913, at *6 (N.D. Cal. Nov. 23, 2011) (denying a defense request for an evidentiary hearing because "mere refusal to accept the uncontradicted evidence does not create a material issue of fact"); *United States v. Walker*, 239 F. Supp. 3d 738, 739 (S.D.N.Y. 2017) ("While [an evidentiary hearing] might have been warranted if

4

there were important credibility issues that could not be addressed from the paper record, the defendant has made no showing that that is the case here."). Thus, consistent with the Ninth Circuit authorities, the Court **DENIES** the motion to suppress the defendant's statements.

The Court **SETS** the matter for status conference on **March 15, 2023 at 1:00 p.m. before Magistrate Judge Sheila K. Oberto**, though counsel may stipulate to an mutually convenient date, provided there is an adequate time exclusion.

IT IS SO ORDERED.

Dated:  **March 13, 2023**

UNITED STATES DISTRICT JUDGE